IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**TERRY PAGE,**

    **PLAINTIFF,**

**VS.**                                                        **CV NO.:**

**BOATRIGHT COMPANY, INC.,**

    **DEFENDANT.**                   **JURY TRIAL DEMANDED**

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

### II. PARTIES

2. Plaintiff, Terry Page (hereinafter "Plaintiff") is a resident of Kimberly, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the NORTHERN District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus,

pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Defendant Boatright Company, Inc., ("Defendant") is a company registered and doing business in the State of Alabama with offices located in Birmingham, Jefferson County, and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s). Therefore, this Court has jurisdiction over Defendant.

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5. Defendant hired Plaintiff during the year 2002.

6. Defendant operates a commercial refrigeration installation business.

7. Defendant employed Plaintiff as a leadman/pipe fitter.

8. Defendant assigned leadmen, such as the Plaintiff, along with helpers, to travel to customer locations and perform installation work of commercial refrigeration equipment and perform maintenance on said equipment.

9. Defendant directed Plaintiff, and other similarly situated leadmen and helpers, to travel across state lines in order to perform their services for the benefit of customers.

10. At all times during the employment relationship, Defendant classified Plaintiff as an hourly paid, non-exempt employee.

11. Defendant last paid Plaintiff an hourly rate of $29.00 per hour.

12. During the three years preceding the filing of this Complaint, Defendant also paid Plaintiff an hourly rate of $25.00 per hour.

13. Plaintiff resigned his employment in 2018.

14. During the three years preceding the filing of this complaint, Plaintiff typically worked over forty hours in a work week.

15. Plaintiff regularly worked between forty-eight (48) and sixty (60) hours in a work week.

16. For purposes of recording hours worked and determining overtime compensation, Defendant sets its workweek to begin on Monday at 12:00 a.m. and end on Sunday at 11:59 p.m.

## IV. COUNT ONE – FLSA – Overtime Violations

17. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-16 above.

18. During the three years preceding the filing of this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

19. During the three years preceding the filing of this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

20. Defendant's gross annual volume of revenue exceeds $500,000.

21. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

22. During the three years preceding the filing of this Complaint, Plaintiff and all other similarly situated leadmen were employees of Defendant as defined by 29 U.S.C. § 203(e)(1).

23. Plaintiff and all similarly situated leadmen employed by Defendant were engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Plaintiff's interstate commercial activity included, but was not limited to, installing refrigeration products that originated out of state or outside of the United States, and sold to customers not in the State of Alabama, and servicing refrigeration equipment and products owned by customers, and operating their businesses, outside of the State of Alabama.

24. During the three years preceding the filing of this Complaint, Defendant recorded Plaintiff's hours worked in excess of forty hours for a work week on at least one or more occasion.

25. Defendant failed to pay Plaintiff for all hours worked in excess of forty in a work week.

26. Defendant provided Plaintiff, and other similarly situated employees, with a General Motors Corporation 2500 Sierra truck or Chevrolet Silverado truck in order to travel from their home or Defendant's location to the customer's location.

27. The commercial motor vehicle weight of General Motors Corporation 2500 Sierra truck is less than 10,001 pounds.

28. The commercial motor vehicle weight of a Chevrolet Silverado truck is less than 10,001 pounds.

29. As part of his job duties, Plaintiff typically left his home in Kimberly, or Defendant's office, and traveled to the customer location.

30. Defendant compensated Plaintiff, and other similarly situated employees, for the travel time from his home in Kimberly, or Defendant's office, to the customer location if such travel was in excess of fifty miles from the Plaintiff's home.

31. For the benefit of the Defendant, Plaintiff, helpers, and similarly situated leadmen often remained "out of town" staying in hotels throughout the week on jobs if the travel was in excess of fifty miles from Plaintiff's home or Defendant's office.

32. At the conclusion of the work & labor performed for the customer, and the benefit of the Defendant, Plaintiff traveled from the customer location back to his home in Kimberly or the Defendant's office.

33. Defendant failed to compensate Plaintiff for the travel time from the customer location back to his home in Kimberly or the Defendant's office, regardless of the length of the trip.

34. During 2015 and 2016, Defendant paid Plaintiff, and other similarly situated employees, travel time to the customer location separate and apart from labor, requiring forty hours of actual labor plus the labor in an equal amount of the travel time before any overtime premium applied.

35. When Defendant followed this policy of paying straight time as described in the preceding paragraph, Defendant also failed to pay Plaintiff, and other similarly situated employees, any compensation for the travel time from the customer location back to the employee's home or Defendant's office.

36. Beginning in or about 2016, Defendant changed its policy regarding travel time and began counting travel time to the customer location with labor time.

37. Defendant often assigned to Plaintiff and other similarly situated employees each a helper that traveled with the leadmen and assisted in the installation and service duties for the benefit of Defendant's customers.

38.     Later, Defendant changed its policy regarding travel pay rendered to the leadmen, such as Plaintiff and other similarly situated employees, wherein Defendant compensated Plaintiff for the travel time necessary to arrive at the customer location, but Defendant did not compensate Plaintiff and other similarly situated employees, for the travel time to return home.

39.     As part of the policy referenced in the above paragraph, Defendant also compensated the Helper for the travel time to the customer location but did not compensate the Helper from the customer location back to the Helper's home.

40.     Pursuant to the Defendant's policy, Plaintiff and other similar situated employees were assigned to drive Defendant's trucks, but Helpers could from time to time participate in the labor of travel to and from the customer location, resulting in Leadmen and Helpers driving without compensation.

41.     As part of the policy referenced in the above paragraph, Defendant failed to compensate the Plaintiff for travel time from the customer location back to his home or Defendant's office at a regular rate of pay or at an overtime rate of pay.

42.     As a result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

### V. COUNT TWO – Opt-in Collective Action

43.     Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-42 above.

44. Plaintiff brings this suit as an opt-in collective action pursuant to the FLSA 16(b).

45. Plaintiff's Opt-In Consent Form is attached as Exhibit A.

46. For the three years preceding the filing of this complaint, Defendant employed approximately 50 people subjected to similar policy and practice violations of the FLSA as that of the Plaintiff.

47. The potential class is comprised of any and all persons employed by Defendant at any time during the three (3) years preceding the filing of this Complaint that were hourly paid, classified as non-exempt, and were subjected to Defendant's policy of failing to pay Plaintiff and similarly situated leadmen for travel time.

48. Upon information and belief, the same practices alleged in the aforementioned paragraphs comprise violations of the FLSA against other employees, thereby presenting both common questions of law and fact common to the class.

49. Upon information and belief, the claims of the representative Plaintiff, are typical of claims of the class. Defendant subjected Plaintiff and other members of the class to the same unlawful employment practices regarding unpaid travel time and other violations of the Fair Labor Standards Act.

50.     Upon information and belief, Plaintiff will fairly and adequately protect the interests of the class in that he shares common interests with the other members of the class and have employed counsel who will vigorously prosecute the interests of the class.

51.     Upon information and belief, the questions of law and fact common to the members of the class predominate over any questions affecting only individual members as the same practice of employing class members without paying them in accord with the FLSA was used by Defendant on all class members.

52.     Upon information and belief, this collective action is superior to other available methods to the fair and efficient adjudication of the controversy because of the large number of potential plaintiffs; because of the relatively moderate amount of damages available to potential plaintiffs were they to commence an individual action; and, because of the predominate factual and legal questions common to all class members.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.     The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B.   This Court award Plaintiff the amount of his back overtime pay, plus an additional equal amount as liquidated damages; nominal damages; and special damages;

C.   That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

D.   For such other and further relief as this Court deems equitable, proper and just.

_____
Allen D. Arnold

_____
Leslie Palmer

**OF COUNSEL:**
Allen D. Arnold, Attorney at Law
A Member of Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
T: (205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

Leslie Palmer
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, Alabama 35233
T: (205) 285-3050
F: (205) 386-4383
leslie@palmerlegalservices.com

PLAINTIFF REQUESTS TRIAL BY STRUCK JURY

_____
OF COUNSEL

DEFENDANT'S ADDRESS
Boatright Company, Inc.
C/O Any Officer or Agent
653 Black Creek Road
Birmingham, AL 35217